# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 3, 2014

Lyle W. Cayce
Clerk

No. 12-70013

RICHARD LEE TABLER,

Petitioner-Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:10-CV-34

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Petitioner Richard Tabler was convicted in Texas state court of capital murder and sentenced to death. While Tabler's mandatory direct appeal was pending with the Texas Court of Criminal Appeals, Tabler requested to waive his remaining postconviction appellate rights and the trial court granted his request after determining that he was competent to do so. Following the denial of his direct appeal, Tabler attempted to reinstate his right to state habeas

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-70013

proceedings. The Court of Criminal Appeals denied the motion. Tabler then filed a petition for habeas corpus relief in federal district court, which denied his petition and found that a certificate of appealability (COA) should not issue. Tabler now requests that this court grant a COA pursuant to 28 U.S.C. § 2253(c). For the reasons that follow, Tabler's application for a COA is denied.

## FACTS AND PROCEEDINGS

### I. Conviction and Sentencing

On March 21, 2007, Tabler was convicted of capital murder for the shooting deaths of Mohamed-Amine Rahmouni and Haitham Zayed. During the penalty phase of his trial, the State presented to the jury Tabler's confession that he murdered two women for spreading news of his crimes. Tabler admitted to luring the women to a lake with the promise of drugs and then shooting them each multiple times with the same gun used to murder Rahmouni and Zayed. The jury heard further testimony that Tabler had a history of threatening law enforcement officers and fellow inmates.

Tabler's trial counsel presented mitigating evidence in an attempt to show that Tabler was "not normal" and therefore undeserving of the death penalty. This evidence included: (1) testimony from Tabler's mother and sister about his difficult childhood, potential birth trauma, and history of psychiatric treatment; (2) testimony from Dr. Meyer Proler, a clinical neurophysiologist, concerning an abnormality of the left temporal frontal region of Tabler's brain that causes difficulty learning, planning, and weighing the consequences of actions; (3) testimony from Dr. Susan Stone, a psychiatrist, that Tabler suffered from a severe case of attention deficit hyperactivity disorder, borderline personality disorder, and a history of head injuries, all of which inhibited his ability to rationally assess situations and control his impulses;

2

No. 12-70013

and (4) testimony from Dr. Deborah Jacobvitz, a psychologist, regarding the impact of parental neglect and abandonment on Tabler's development.

In rebuttal, the state called Dr. Richard Coons, a psychiatrist, who diagnosed Tabler as having antisocial personality disorder. Dr. Coons testified that although individuals with antisocial personality disorder may lack remorse or concern for others, they are not compelled to commit criminal acts. Following the State's rebuttal, both parties presented closing arguments. During the State's closing, the prosecutor argued that Tabler's troubled childhood did not mitigate his culpability because it was not related to the crimes for which he was convicted. After three hours of deliberation, the jury found that Tabler presented a continuing threat to society and that there was insufficient mitigating evidence to warrant a sentence of life imprisonment in lieu of a death sentence. *See* Tex. Code Crim. Proc. art. 37.071 § 2(b), (e). The trial court accordingly sentenced Tabler to death.

## II. State Postconviction Proceedings

On April 24, 2007, attorneys David Schulman and John Jasuta were appointed as Tabler's postconviction counsel. Tabler was provided with separate counsel for his direct appeal, which ran concurrently with his postconviction habeas relief. The State filed its original brief in Tabler's direct appeal on October 1, 2008. Tabler's habeas petition was thus required to be filed no later than November 17, 2008. *See id.* art. 11.071 § (4)(a) (application for writ of habeas corpus must be filed within 180 days after the convicting court appoints counsel or 45 days after the state's original brief is filed on direct appeal, whichever date is later).

No petition for habeas relief was filed. On May 15, 2008, Tabler informed his attorneys that he wished to waive his postconviction appellate rights. On August 11, 2008, Tabler sent a letter to the Court of Criminal Appeals waiving his right to any state habeas proceedings and volunteering for execution. The

3

No. 12-70013

Court of Criminal Appeals referred the matter to the state trial court judge who had presided over Tabler's criminal trial. The state trial court ordered a hearing on Tabler's competency to waive his appeals and ordered that Tabler undergo examination by Dr. Kit Harrison. Dr. Harrison examined Tabler on June 28, 2008, and found him to be mentally competent. At Tabler's September 30, 2008 competency hearing, the state trial court considered Dr. Harrison's evaluation; offered Tabler, his attorneys, and the State an opportunity to present additional evidence relevant to the competency determination; and questioned Tabler in open court to determine whether his waiver was knowing and voluntary. During this questioning, the judge presented Tabler with the letter he had written to the Court of Criminal Appeals and asked him to explain his request. Tabler replied: "Basically, I'm asking the Court of Appeals to drop all of my appeals after my direct appeal. And should my direct appeal be denied, I'm asking for an execution date as soon as possible." Upon Tabler's instruction, Schulman and Jasuta did not contest the State's evidence of competency. The state court found Tabler competent to waive his postconviction rights.

On June 29, 2009—nine months after the competency hearing and eight months after his habeas petition was due—Tabler requested that his postconviction rights be reinstated. On September 16, 2009, the Court of Criminal Appeals rejected Tabler's motion, finding that his decision to waive his state postconviction appeals was knowing and voluntary and that his failure to file a timely writ of habeas corpus was attributable to his own continued insistence on foregoing that remedy. The Court of Criminal Appeals

4

denied Tabler's direct appeal on the merits three months later and Tabler filed a petition for certiorari with the United States Supreme Court.

## III. Motion for Stay of Execution and Petition for Habeas Corpus in Federal Court

On February 2, 2010, Schulman and Jasuta filed a request to stay execution on Tabler's behalf in the Western District of Texas so that he could exhaust his state court remedies. The district court granted the motion pending the Supreme Court's decision on Tabler's petition for certiorari. But on June 2, 2010 Tabler personally filed a motion to reconsider the stay, claiming that his attorneys had filed the motion without his permission, and again stating his intention to proceed to execution. Tabler's motion to reconsider was forwarded to the Supreme Court along with Schulman and Jasuta's supplemental filing, in which they argued that Tabler was not competent to waive his federal appeals.

Tabler's continued attempts to drop his appeals prompted the district court to hold a second competency hearing. The court appointed Dr. Richard Saunders to perform Tabler's psychological evaluation, who concluded after examination of Tabler and review of his mental health history that Tabler was mentally competent. The district court considered Dr. Saunders' opinion and testimony at Tabler's August 17, 2011 competency hearing and determined that Tabler was mentally competent to waive his rights. The court found that Tabler "is not presently suffering from a mental disease, disorder or defect which prevents him from understanding his legal position and the options available to him or which prevents him from making a rational choice among his options." Schulman appeared to agree with this conclusion, stating to the court at the hearing: "I don't think he's incompetent in a legal sense . . . we

were never trying to say he's not competent in the sense to stand trial or be executed but just that his decisions are not voluntary."

Although Tabler was deemed mentally competent, the district court ruled that his waiver was not voluntary. In October of 2008—more than one month *after* his original state court competency hearing—Tabler made a threatening phone call to a state senator while on death row. An inquiry into the call ultimately led to an investigation into cell phone smuggling in the prison, which purportedly resulted in threats and harassment from prison staff and fellow inmates. Whether or not Tabler's perception matched reality, the district court found that Tabler genuinely believed his family would be harmed if he did not volunteer for execution and therefore found his attempt to waive his federal habeas relief involuntary. On October 11, 2011, the district court denied Tabler's renewed motion to stay and abate the federal habeas proceeding to attempt to exhaust his extant state court claims because Tabler had waived those claims, the Texas trial and appeals courts had found Tabler competent to execute the waiver, and there was nothing to indicate that another attempt at exhaustion would succeed. Tabler subsequently filed a federal habeas petition on November 13, 2011.

Tabler's petition asserted fourteen grounds for relief. Because Tabler waived his state court postconviction rights, the district court held that only those issues raised on direct appeal and rejected by the Court of Criminal Appeals were exhausted, leaving four potential grounds for relief.[1] The only non-defaulted claims were that: (1) the death penalty is unconstitutional as applied to Tabler because he is mentally ill; (2) the prosecutor's closing

---

[1] Although the Court of Criminal Appeals rejected six of Tabler's challenges, Tabler raised only four of those claims in his federal habeas petition. The other two claims—a challenge to the jury instructions and the admissibility of Tabler's confessions—were neither raised as independent grounds of relief nor adequately briefed. Accordingly, those claims were waived.

argument at the punishment phase requiring the jury to find a nexus between mitigating evidence and the crimes of conviction violated the Eighth and Fourteenth Amendments; (3) trial counsel's failure to object to that unconstitutional argument constituted ineffective assistance of counsel; and (4) Texas's "12-10 Rule" violates the Due Process Clause. The district court denied the second claim because Tabler's trial counsel failed to object at trial and rejected the remaining three claims on the merits.

## IV. Application for Certificate of Appealability

Following the denial of Tabler's habeas petition, Marcia Widder replaced Schulman and Jasuta as Tabler's habeas counsel on appeal. Tabler raises four issues in his application for a certificate of appealability: (1) whether the state court competency hearing in which Tabler waived his postconviction appeals violated his due process rights; (2) whether Tabler's postconviction counsel failed to raise meritorious claims challenging his conviction and death sentence in state and federal postconviction proceedings, thereby causing Tabler to forfeit his right to have the federal district court determine if he received effective assistance of trial and appellate counsel; (3) whether the district court's denial of his federal habeas petition without the benefit of the full state court record requires remand; and (4) whether trial counsel's failure to object to the prosecutor's purportedly unconstitutional closing argument constituted ineffective assistance of counsel.

### STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Tabler must obtain a COA before he is permitted to appeal the district court's denial of his requested habeas relief. A COA will not issue under AEDPA's deferential standard of review unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The requisite showing is made by demonstrating that "reasonable

jurists could debate (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Unless and until a COA has issued, federal courts lack jurisdiction to rule on the merits of appeals from habeas petitioners. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

The standard of review for the issuance of a COA varies depending on whether the district court rejected the petition on the merits or on procedural grounds only. If the district court denied the claim for relief on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. If the claim was denied on procedural grounds, the petitioner bears the additional burden of showing "that jurists of reason would [also] find it debatable whether the district court was correct in its procedural ruling." *Id.*

AEDPA provides that when a habeas claim has been adjudicated on the merits in state court, a federal district court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A state court's findings of fact are presumed to be correct

No. 12-70013

unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### I. The State Postconviction Competency Hearing Did Not Violate Tabler's Due Process Rights

As an initial matter, we need not reach Tabler's due process claim because it was not presented to the district court. *Parr v. Quarterman*, 472 F.3d 245, 261 (5th Cir. 2006) ("We generally will not consider an issue raised for the first time in a COA application."). Tabler's Rule 59(e) motion requesting that the district court amend its judgment because counsel effectively abandoned him at the state competency hearing is not sufficient to have preserved the issue for appeal. *See Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (Rule 59(e) motions "cannot be used to raise arguments which could, and should, have been made before the judgment issued.").[2]  But because the adequacy of the state competency hearing is relevant to Tabler's claim of ineffective assistance of counsel and attendant argument that such ineffective assistance provides cause for his procedural default, we will explain here why his due process challenge also fails on the merits.

Unlike the factual findings of the trial judge that derive from the competency hearing, the adequacy of the fact-finding procedure itself is a question of law that we review de novo. *Mata v. Johnson*, 210 F.3d 324, 327 (5th Cir. 2000).  A competency hearing provides constitutional due process if the hearing court (1) orders and reviews a current examination by a medical or mental health expert, (2) allows the parties to present any other relevant

---

[2] Tabler's further assertion that the adequacy of the state competency hearing was raised in the district court because that court relied on the validity of the waiver in denying Tabler's request to stay his federal habeas proceedings lacks merit.  Vague references to the sufficiency of the state court's findings are inadequate to have preserved the issue for appeal.

evidence on the question of competency, and (3) if the judge—on the record and in open court—questions the petitioner "concerning the knowing and voluntary nature of his decision to waive further proceedings." *Id.* at 331.[3]

There is no question that Tabler's state hearing satisfied this standard. First, the trial court appropriately ordered an evaluation of Tabler's mental health by Dr. Harrison following Tabler's request to waive his right to postconviction collateral proceedings. Dr. Harrison's examination ten weeks before Tabler's competency hearing was sufficiently current to satisfy due process concerns. *See Murray*, 243 F. App'x at 54 (five-month-old expert report satisfied due process).

Second, it is undisputed that the trial court provided Tabler and his attorneys an *opportunity* to present any evidence they deemed relevant to the competency determination. The thrust of Tabler's argument is that his attorneys' failure to accept the court's invitation to challenge his competency rendered the hearing non-adversarial and thus constitutionally deficient. But as the term "due process" suggests, the inquiry is concerned only with whether a meaningful opportunity to present evidence was provided, not whether such evidence was in fact presented. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotation marks omitted)); *see also Mata*, 210 F.3d at 331 (competency hearing affords

---

[3] *Mata* involved review of a federal district court hearing to determine the competency of a defendant seeking to waive his federal habeas rights. Because the standard is a constitutional one, this court has applied the *Mata* test in reviewing an analog state hearing. *See Murray v. Quarterman*, 243 F. App'x. 51, 53-54 (5th Cir. 2007).

petitioner due process by "*allowing* the parties to present any other evidence relevant to the question of competency." (emphasis added)).[4]

Third, the court questioned Tabler in open court and on the record to determine that his waiver was both knowing and voluntary. In response to questions from the court, Tabler affirmed that he had conferred with his counsel and did not wish to file a state habeas petition, and that he understood that if his direct appeal was denied, he would be executed. The court also showed Tabler the letter he had written to the Court of Criminal appeals stating his intention to waive postconviction relief and asked Tabler to explain his request. Tabler replied that he was "asking the Court of Appeals to drop all of my appeals after my direct appeal. And should my direct appeal be denied, I'm asking for an execution date as soon as possible." After confirming that Tabler had not changed his mind since authoring the letter, the court warned Tabler that if he should reverse course and decide to file a petition, the Court of Appeals would consider it untimely and might decline to entertain it, to which Tabler replied that he understood.[5] This was clearly sufficient under *Mata*. *Mata* F.3d at 330-31 (the trial court "should seek to elicit a narrative response from the defendant that he has been advised of his rights, that he

---

[4] Tabler's own citations, which focus on a state court's denial of the opportunity to present evidence of incompetence, demonstrate this basic proposition. *See Ford v. Wainwright*, 477 U.S. 399, 412-14 (1986) ("Any *procedure* that *precludes* the prisoner or his counsel from presenting material relevant to his sanity or bars consideration of that material by the factfinder is necessarily inadequate." (emphasis added)).

[5] Tabler also argues that the trial court misled him regarding the timeline for filing his state habeas petition by suggesting that his petition for habeas corpus would not be due until after the Court of Criminal Appeals ruled on his direct appeal. Even were this true, such an error would be harmless. Tabler was not only represented by counsel who would know the correct timeframe for filing the petition, but Tabler was also *waiving that right*. Because he was forfeiting his right to pursue collateral relief, it is irrelevant that the court provided ambiguous information as to the filing deadline. Tabler does not assert that the court misled him regarding the substance of his habeas rights (which it did not).

understands the details and has discussed the matter with his attorney, and that he wishes to waive his constitutional protections.").

Finally, several of Tabler's challenges to the state court competency hearing are challenges to the court's factual finding of competency, not the process itself.[6] In this regard, Tabler offers only his attorney's opinion that he is incompetent, his criticism of Dr. Harrison's testimony as unreliable, and the district court's finding in the federal competency hearing that Tabler's attempted waiver of his federal habeas rights was involuntary. As to Tabler's argument that the result of his federal competency hearing undermines the state court conclusion, a defendant's competency is determined at the time the waiver is made. And the federal district court did in fact conclude that Tabler was mentally competent. The court only disregarded Tabler's attempted waiver because of the alleged threats to his life arising out of an incident that occurred *after* he waived his state postconviction appeals. Tabler's attorney's opinion that Tabler is incompetent and an undefined challenge to Dr. Harrison's evaluation do not approach the showing of clear and convincing evidence needed to rebut the state trial court's competency determination (and

---

[6] A defendant's competency to waive habeas proceedings is determined by whether "he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees v. Peyton*, 384 U.S. 312, 314 (1966). The capacity for "rational choice" in this context is equivalent to the capacity for "rational understanding" in determining a defendant's competency to stand trial. *Godinez v. Moran*, 509 U.S. 389, 398 n.9 (1993); *see also Rumbaugh v. Procunier*, 753 F.2d 395, 398-99 (5th Cir. 1985) (describing three-part test for determining whether a defendant is competent to waive postconviction relief).

the Court of Criminal Appeals' affirmance). Tabler's state competency hearing and the resulting determination of competency did not deny him due process.

## II. Tabler's Postconviction Counsel Were Not Constitutionally Ineffective and Tabler Waived Any Potential Claims of Ineffective Assistance of Trial Counsel

Tabler argues that he was denied the effective assistance of counsel in both his state and federal habeas proceedings and that his counsels' constitutionally-deficient performance qualifies as cause to excuse the procedural default of his ineffective-assistance-of-trial-counsel claims. To prevail on an ineffective-assistance-of-counsel-claim, a petitioner must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness" and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Tabler, through new counsel Widder, alleges that Schulman and Jasuta provided ineffective assistance at his state competency hearing by failing to challenge his competence, which in turn led to the waiver of his right to state habeas proceedings in which he could have raised claims of ineffective assistance of his state trial counsel. Because Schulman and Jasuta were also Tabler's federal habeas counsel, Tabler claims that they were further ineffective in his federal habeas proceeding because they faced an ethical conflict in raising claims about their own ineffectiveness in the state competency hearing.

Insofar as Tabler is alleging that ineffective assistance of his *habeas* counsel alone requires a remand to the district court to re-litigate his petition, he is mistaken. It is well-established that there is no federal constitutional right to counsel in postconviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). "Because a petitioner does not have a constitutional right to counsel in post-conviction habeas proceedings, it follows that a petitioner cannot claim ineffective

No. 12-70013

assistance of counsel in such proceedings." *Irving v. Hargett*, 59 F.3d 23, 26 (5th Cir. 1995).

In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Supreme Court recognized a "narrow exception" to the general rule that there is no right to counsel in collateral proceedings, holding that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315; *see also Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013) (*Martinez* applies to Texas state habeas proceedings). An attorney's error on direct appeal implicates the Sixth Amendment, and where an "initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Martinez*, 132 S. Ct. at 1317. But the Court was clear that the *Martinez* exception "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons." *Id.* at 1320. Moreover, *Martinez* is an equitable rule, not a constitutional one, and does not provide defendants a freestanding constitutional claim to raise in a federal habeas petition. *Id.* at 1319.

To fall within the *Martinez* exception and avoid procedural default of any claim of ineffective assistance of trial counsel, Tabler must demonstrate (1) that his state habeas counsel were ineffective in an initial-review collateral proceeding, "where the claim should have been raised," and (2) "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318. Because Tabler waived his state postconviction rights, the only state habeas proceeding that occurred was the competency hearing. As

14

Tabler could not have raised claims of ineffective assistance of trial counsel at that hearing, no "initial-review collateral proceeding"—as defined in *Martinez*—ever took place.  The Supreme Court has not expressly extended the reasoning of *Martinez*'s "narrow exception" to attorney errors that prevent an initial-review collateral proceeding from being held (and thus prevent a defendant from raising claims of ineffective assistance of trial counsel).  But we need not resolve that question here.  Even if ineffective assistance of state habeas counsel at a postconviction competency hearing provides cause for the procedural default of ineffective-assistance-of-trial-counsel claims, Tabler fails to demonstrate that the performance of his state habeas counsel and state trial counsel was constitutionally deficient.

To revive his ineffective-assistance-of-trial-counsel claims in federal court (assuming *Martinez* applies), Tabler must first show that his habeas counsels' performance at his competency hearing was ineffective under *Strickland*.  But Schulman and Jasuta did not "abandon" Tabler at the hearing as he now claims.  To the contrary, they followed his explicit instructions.  "Neither the Supreme Court nor this court has ever held that a lawyer provides ineffective assistance by complying with the client's clear and unambiguous instructions to not present evidence." *Wood v. Quarterman*, 491 F.3d 196, 203 (5th Cir. 2007).  The state trial court, the Court of Criminal Appeals, the federal district court, and both doctors appointed to evaluate Tabler found him mentally competent.  It was completely reasonable for habeas counsel to conclude that Tabler was competent, as they subsequently represented to the district court, and to comply with his directive not to argue otherwise. *See* Va. Legal Ethics Op. No. 1737 (1999) (If a capital murder defendant is found competent by a psychiatrist and desires a sentence of death rather than life

imprisonment, his attorney "is ethically bound to carry out the client's directive, even though such instruction is tantamount to a death wish.").[7]

*Martinez* does not provide a vehicle to set aside procedural default of any constitutional claim, but only preserves ineffective-assistance-of-trial-counsel challenges forfeited because of ineffective assistance of habeas counsel. Even if Tabler could show that his state habeas counsel were ineffective, he has not made a "substantial showing" of his underlying claim of ineffective assistance of trial counsel required by *Martinez*. Tabler has merely listed potential errors in bullet point format. Holding that a list of hypothesized errors constitutes the requisite "substantial showing" of ineffective assistance at trial would transform *Martinez* from a "narrow exception" providing cause for procedural default into a virtual requirement of complete review of the state trial on federal habeas. We decline to do so.

Tabler also offers a corollary ineffective assistance argument predicated on his *statutory* right to counsel pursuant to 18 U.S.C. § 3599(a)(2). Citing recent Fourth Circuit jurisprudence, Tabler asserts that he was denied effective assistance in his federal habeas action because his state habeas counsel also served as his federal habeas counsel, and thus were necessarily impugned with an ethical conflict in identifying potential *Martinez* claims. The Fourth Circuit has held that "if a federal habeas petitioner is represented by the same counsel as in state habeas proceedings, and the petitioner requests independent counsel in order to investigate and pursue claims under *Martinez*

---

[7] It is also doubtful that Tabler could establish prejudice. The same judge that presided over Tabler's competency hearing presided over his trial, and thus would have already heard much of the evidence regarding Tabler's mental health, including testimony from four mental health professionals during the punishment phase. *See Dennis ex rel. Butko v. Budge*, 378 F.3d 880, 894 (9th Cir. 2004) ("[J]udges who have an opportunity to observe and question a prisoner are often in the best position to judge competency, especially . . . where the judge has had more than one opportunity to observe and interact with the prisoner.").

. . . , qualified and independent counsel is *ethically required.*" *Juniper v. Davis*, 737 F.3d 288, 290 (4th Cir. 2013). "This is because a clear conflict of interest exists in requiring petitioner's counsel to identify and investigate potential errors that they themselves may have made in failing to uncover ineffectiveness of trial counsel while they represented petitioner in his state post-conviction proceedings." *Fowler v. Joyner*, 753 F.3d 446, 462 (4th Cir. 2014) (internal quotation marks and alterations omitted).

Whatever the merits of the Fourth Circuit's rule, it is not applicable here. The purpose of appointing independent counsel is to *investigate* whether any potential *Martinez* claims exist. *Id.* at 463. Tabler was appointed independent counsel for his federal appeal who has had the opportunity to investigate and present these claims. *See id.* (denying motion for remand and appointment of independent counsel where independent counsel had already been provided). Moreover, the Fourth Circuit's rule was crafted for the typical *Martinez* scenario, where state habeas counsel's ineffectiveness is his failure to uncover ineffectiveness of trial counsel. What is really at issue here is whether Tabler was competent to waive his postconviction rights. Tabler is alleging that his habeas counsel were ineffective for failing to challenge his competency—not for failing to uncover ineffective assistance of trial counsel claims, which they never had the opportunity to do. Because Tabler's habeas counsel were not ineffective in his competency hearing, he cannot prevail on his *Martinez* claim even if he could otherwise make a substantial showing of ineffectiveness of trial counsel (which he does not). *See Martinez*, 132 S. Ct. at 1318 (to excuse procedural default of ineffective-assistance-of-trial-counsel claims, prisoner

No. 12-70013

must first show that his state habeas counsel was ineffective under *Strickland*).

## III. The District Court's Denial of Tabler's Habeas Petition Without The Complete State Court Record Does Not Require Remand

Tabler argues that the district court's decision to deny his habeas petition is rendered unreliable because the court did not have the entire trial transcript when it made its rulings. Tabler requests that the entire case be remanded so the district court can revisit its rulings with the full trial transcript. But as this court has stated:

> There is nothing in the statute or in the Habeas Corpus Rules that requires a district court to review a state court record in its entirety. Indeed, federal courts do not sit as courts of appeal and error for state court convictions. Whether it is necessary to examine all of the state court proceedings is a decision left to the discretion of the district court judge. Here the district court was satisfied to make its decision upon a review of relevant portions of the state record. Dillard neither objected nor requested that additional transcripts be furnished, and no prejudice has been shown. We therefore hold that no error has been committed.

*Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

Tabler's attorneys supplemented his federal habeas petition with nearly 150 pages of exhibits and record excerpts, which the district court deemed sufficient to address the issues presented. All that is required is that the relevant portions of the record are available to the court. *See Magourik v. Phillips*, 144 F.3d 348, 362 (5th Cir. 1998) ("Regardless of how deferential the standard of review for state court fact findings . . . we fail to see how any review at all can be conducted when the *relevant portions* of the state court record on remand are not available for review." (emphasis added)). Ruling that a remand is required to allow review of materials deemed unnecessary by both the district court and Tabler himself would be tantamount to requiring district courts to review the entirety of the state court record before ruling on a habeas

18

petition. This court has expressly rejected that requirement.

Additionally, Tabler is unable to show prejudice from the lack of a complete trial transcript. Ten of his fourteen claims for relief were unexhausted. Of the four exhausted claims, two of them—that executing the mentally ill and Texas's "10-2" rule are unconstitutional—are not fact-specific challenges that would be aided by a detailed examination of the record. Similarly, the issue of whether Tabler's trial counsel's alleged impermissible jury argument was procedurally barred may be adjudicated by simply reviewing a transcript demonstrating trial counsel's failure to object. As to the final claim for relief that trial counsel's failure to object to the prosecution's closing argument constituted ineffective assistance of counsel, that is a legal question fully capable of resolution on a partial transcript.[8] The district court gave adequate consideration to Tabler's properly presented claims.

## IV. Tabler's Trial Counsel Was Not Constitutionally Ineffective For Failing To Object To The Prosecution's Closing Argument

Tabler's final claim for relief is that his trial counsel was constitutionally ineffective for failing to object to the prosecution's argument that the jury should not consider Tabler's troubled childhood a mitigating circumstance because it was unconnected to his crimes of murdering four individuals outside of his family. Because the Court of Criminal Appeals rejected this claim on its merits, Tabler must not only establish that counsel was ineffective under *Strickland*, but also that the state court's determination that counsel was not constitutionally deficient was unreasonable. *See Harrington v. Richter*, 131 S.

---

[8] Tabler also suggests that the district court could not validly uphold the state court's waiver hearing without the benefit of the mental health testimony presented at his trial. This contention is puzzling for the reason that, as already noted, the adequacy of the competency hearing was not presented to the district court (indeed, that is the very basis for Tabler's unavailing argument that independent counsel should have been appointed at the federal level). Accordingly, the district court had no need for this information. In any case, for the reasons now exhaustively discussed, there is no question that Tabler's competency hearing and the factual determination of competence itself satisfied due process.

Ct. 770, 788 (2011) ("The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly so.'" (internal citations omitted)).

Tabler maintains that the prosecutor's argument violated *Tennard v. Dretke*, 542 U.S. 274, 287 (2004), which invalidated the Fifth Circuit's requirement of a nexus between a defendant's crime and mitigating evidence presented during trial before a court may consider a defendant's *Penry* claim. A *Penry* claim, in turn, alleges a violation of the Eight Amendment where the jury is precluded from giving effect to mitigating evidence presented by the defendant. *See id.* at 278-79 (describing *Penry v. Lynaugh*, 492 U.S. 302 (1989) and *Penry v. Johnson*, 532 U.S. 782 (2001)).

As an initial matter, Tabler is not challenging his inability to bring a *Penry* claim and thus *Tennard* does not apply to his habeas petition. The Supreme Court has invalidated prosecutorial argument on the basis of the Eight Amendment only once where a death sentence was rendered "by a sentencer who ha[d] been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Caldwell v. Mississippi*, 472 U.S. 320, 328-29 (1985). But "*Caldwell* is relevant only to certain types of comment—those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision." *Darden v. Wainwright*, 477 U.S. 168, 183 n.15 (1986); *see also Romano v. Oklahoma*, 512 U.S. 1, 8 (1994) (*Caldwell* prohibits the prosecution from misleading the jury regarding the role it plays in the sentencing decision).

Even under the broadest interpretation of a *Penry* claim, Tabler does not fall within its purview. While the prosecution did state that mitigating evidence was irrelevant to the jury's sentencing determination, the jury was specifically instructed to "consider all evidence admitted at the guilt or

innocence stage and the punishment stage, *including evidence of the defendant's background* or character or circumstances . . . that militate[ ] against the imposition of the death penalty." *Compare Lynaugh*, 492 U.S. 302, 326 (1989) ("In light of the prosecutor's argument, *and in the absence of appropriate jury instructions*, a reasonable juror could well have believed that there was no vehicle for expressing the view that Penry did not deserve to be sentenced to death based upon his mitigating evidence." (emphasis added)).

In any case, Tabler is not alleging a claim under the Eighth Amendment, but one under the Sixth. As the Court of Criminal Appeals and the district court found, there is nothing to establish that trial counsel's failure to object was not the exercise of legitimate trial strategy. With regard to the prejudice prong of the *Strickland* test, as just noted, the jury was instructed to consider evidence of Tabler's background and is presumed to have followed that instruction. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Considering the evidence presented at trial of Tabler's culpability; the expansive argument defense counsel made as to Tabler's "abnormality," which included testimony from three medical professionals as to Tabler's mental health, and in the case of Dr. Jacobvitz, focused specifically on the developmental effects of Tabler's childhood; defense counsel's own admonition to the jury that mitigating evidence did not have to be connected to Tabler's crimes; and the court's instruction that Tabler's background should be considered in the jury's sentencing decision, Tabler cannot show that it is reasonably likely that, but for the prosecution's misstatements, he would have received a sentence of life imprisonment instead of death. Accordingly, his ineffective-assistance-of-trial-counsel claim fails to approach the required showing of a denial of a constitutional right.

## CONCLUSION

For the foregoing reasons, we DENY Tabler's petition for a COA.

No. 12-70013

JAMES L. DENNIS, Circuit Judge, dissenting:

This case presents difficult and interesting issues about how courts should address the requests of a death-sentenced defendant to first waive his rights, including his right to life itself, and then revoke the waiver. Reasonable minds could differ on how best to address the troubling circumstances that have been presented in this case. However, I cannot agree with the majority's resolution here because it is not in accordance with law.

Under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the state-court procedural default of certain challenges to a conviction or sentence may be excused, and those claims may be litigated in federal habeas proceedings (rather than precluded from consideration), if the habeas petitioner shows that the default stemmed from the ineffective assistance of the petitioner's state counsel. Therefore, under *Martinez* and *Trevino*, the effectiveness of state habeas counsel may be an important issue during federal habeas proceedings.

Here, however, when the federal district court appointed attorneys to represent Richard Lee Tabler during his federal habeas proceedings, *see* 18 U.S.C. § 3599(a)(2) (right to counsel), the court appointed the *same* attorneys who represented him in the state proceedings and whose representation there was arguably ineffective.[1] Because Tabler's federal attorneys also represented

---

[1] It is argued that their representation during the state proceedings was ineffective because they disregarded indicia of Tabler's troubled mental state and allowed him to waive his right to state habeas proceedings without testing his competency to waive such rights. *See, e.g.*, *Newman v. Norris*, No. 05-2107, 2008 WL 222689, at *8 (W.D. Ark. Jan. 24, 2008) ("The position that Petitioner was not competent to waive his rights to counsel and to seek post-conviction relief should have been advanced by an attorney, either a counsel of record or a 'next friend.' The court's failure to appoint such a representative resulted in an evidentiary hearing that failed to adequately develop all material facts and failed to afford Petitioner the process he was due, resulting in a hearing that was neither full nor fair."); *Appel v. Horn*, 250 F.3d 203, 215 (3d Cir. 2001) ("[The attorneys] had the obligation to act as counsel at Appel's competency hearing by subjecting the state's evidence of competency to meaningful adversarial testing.").

22

him in the state proceedings, they were conflicted from arguing in federal court that their assistance during the earlier state proceedings was inadequate. There can be no serious doubt that an attorney is conflicted from arguing that his own representation was ineffective. Therefore, Tabler's statutory right to counsel—*unconflicted* counsel—in the federal proceedings was denied. Indeed, the Fourth Circuit has recognized the conflict of interest in materially identical circumstances. *See Gray v. Pearson*, 526 F. App'x 331, 334 (4th Cir. 2013); *Juniper v. Davis*, 737 F.3d 288, 289 (4th Cir. 2013). We should grant a certificate of appealability, vacate the district court's judgment, and remand for adjudication with unconflicted counsel. But the majority declines to do so and instead brushes aside the conflict of interest that deprived Tabler of his legal right to counsel, which is a right that the law does not allow us to ignore.

Moreover, in order to disregard Tabler's right to counsel, the majority renders judgment on the effectiveness of Tabler's state habeas attorneys. Those attorneys were, the majority concludes, effective. This is a stunning decision. Under *Martinez* and *Trevino*, the effectiveness of Tabler's state habeas attorneys was an important issue in federal court, and Tabler's federal attorneys were conflicted from litigating and *did not litigate* that issue. There has thus been no record development on the issue, and the majority has no basis but pure speculation to purport to decide that Tabler's state habeas attorneys afforded effective representation. *See Satterwhite v. Texas,* 486 U.S. 249, 256 (1988) ("Since the scope of a violation such as a deprivation of the right to conflict-free representation cannot be discerned from the record, any inquiry into its effect on the outcome of the case would be purely speculative."). In essence, the majority concludes that we can violate Tabler's right to unconflicted counsel based on an assumption that unconflicted counsel would probably do him no good anyway. The law does not allow this sort of judgment

23

No. 12-70013

"based on an assumption." *United States v. Herrera*, 412 F.3d 577, 582 (5th Cir. 2005).

For the reasons hereinafter assigned, I respectfully dissent.

## I.

On April 2, 2007, Tabler was sentenced to death in Texas state court.[2] Following his conviction, on April 24, the state court appointed attorneys David Schulman and John Jasuta to represent Tabler during his state habeas proceedings. *See* Tex. Crim. Proc. Code art. 11.071 § 1, 2 (right to appointment of counsel "for an application for a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death").

On August 11, 2008, Tabler, acting pro se although he was represented by counsel, sent a letter to the Texas Court of Criminal Appeals asking to waive his "rights to habeas corpus proceedings and volunteer for execution." The Court of Criminal Appeals forwarded the letter to the state trial court, which held a hearing on September 30, 2008 to address Tabler's competency to waive his state habeas rights.

Today, Tabler, who is no longer represented by Schulman and Jasuta and is now represented by a new attorney, Marcia Widder, contends, through the new attorney, that the competency-and-waiver hearing was flawed because it was non-adversarial in nature. That is, Tabler's attorneys then, Schulman and Jasuta, did not litigate Tabler's competency to waive his habeas rights nor did they seek to have the court appoint a representative for Tabler's interests who would litigate the issue. Tabler, through attorney Widder, further contends that, because Schulman and Jasuta had significant indicia of Tabler's unstable mental state—including that he had previously decided to drop all

---

[2] On December 16, 2009, the Texas Court of Criminal Appeals affirmed the conviction and death sentence. *Tabler v. State*, No. AP-75,677, 2009 WL 4931882 (Tex. Crim. App. Dec. 16, 2009) (unpublished).

legal appeals only to change his mind later on numerous occasions—it was ineffective assistance of counsel for them to allow Tabler to waive his habeas rights without taking action to test his competency.[3] *See, e.g.*, *Newman v. Norris*, No. 05-2107, 2008 WL 222689, at *8 (W.D. Ark. Jan. 24, 2008) ("The position that Petitioner was not competent to waive his rights to counsel and to seek post-conviction relief should have been advanced by an attorney, either a counsel of record or a 'next friend.' The court's failure to appoint such a representative resulted in an evidentiary hearing that failed to adequately develop all material facts and failed to afford Petitioner the process he was due, resulting in a hearing that was neither full nor fair."); *Appel v. Horn*, 250 F.3d 203, 215 (3d Cir. 2001) ("[The attorneys] had the obligation to act as counsel at Appel's competency hearing by subjecting the state's evidence of competency to meaningful adversarial testing."). But Schulman and Jasuta took no such action, and, at the conclusion of the non-adversarial hearing, the state court declared Tabler's state habeas rights waived. On November 5, 2008, the state court issued an order dispensing with the habeas action.

Then Tabler changed his mind. On June 29, 2009, he wrote a letter to the state trial court requesting that his state habeas case be reinstated. Schulman and Jasuta, acting as Tabler's counsel, filed a motion with the Court of Criminal Appeals to continue the representation and to file a state habeas petition on Tabler's behalf. The court denied the motion because, it said, the

---

[3] After the September 30, 2008, competency-and-waiver hearing, Tabler sent a letter to the United States Supreme Court seeking to have the Court dismiss the pending petition for writ of certiorari regarding his direct appeal to the Texas Court of Criminal Appeals. On June 15, 2010, attorneys Schulman and Jasuta, along with Tabler's direct appeal attorney, filed a statement in the Supreme Court stating, *inter alia*, that Tabler "suffers from serious mental disabilities" and "is not competent and able to make a knowing, voluntary and intelligent waiver." The attorneys further stated that Tabler "has decided and determined to drop all appeals on at least five previous occasions over the last three years," and "[i]n each instance . . . would subsequently change his mind." At least two of those instances occurred *before* the September 30, 2008, hearing.

record "demonstrates that [Tabler] made a knowing and voluntary choice to waive habeas review."

On February 12, 2010, Tabler's federal habeas proceedings in district court began with an application for stay of execution and motion for appointment of counsel. Both were filed by Schulman and Jasuta, on Tabler's behalf. On February 25, the district court appointed Schulman and Jasuta as Tabler's federal habeas counsel. *See* 18 U.S.C. § 3599(a)(2) (right to counsel in federal habeas proceedings "seeking to vacate or set aside a death sentence"). On November 13, 2011, Schulman and Jasuta filed Tabler's federal habeas petition. The district court dismissed the petition in full on February 9, 2012.

On March 20, 2012, the Supreme Court decided *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In *Martinez*, the Court held generally that the state-court procedural default of certain challenges to a conviction or sentence (specifically, ineffective-assistance-of-trial-counsel claims under the Sixth Amendment) may be excused, and those claims may be litigated in federal habeas proceedings (rather than precluded from consideration), if the habeas petitioner shows that the default stemmed from the ineffective assistance of his state habeas counsel. *Id.* at 1320 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").

As a result of *Martinez*, the effectiveness of state habeas counsel became a significant issue in federal habeas proceedings. Thus, Schulman and Jasuta, who served as Tabler's state habeas counsel, realized that they should no longer serve as his federal counsel, as they have an obvious conflict of interest against arguing that their work in the state court was ineffective. On March

29, 2012, Schulman and Jasuta moved in the district court to withdraw as Tabler's attorneys and for the appointment of new counsel, explaining:

> *Martinez* may require the appointment of different counsel in federal habeas proceedings than those who represented the applicant in state habeas corpus proceedings. It provides a legal avenue for new habeas counsel to pursue procedurally defaulted claims in federal court by arguing that state habeas counsel were ineffective. Applicant is entitled to such counsel.

On April 4, 2012, the district court denied the motion. The court explained that it was "persuaded that no attorneys could have proceeded, or could proceed, any more effectively than the attorneys currently on this case."

On April 26, 2012, Widder appeared in the district court and moved to substitute herself for Schulman and Jasuta as Tabler's federal habeas counsel. The following day, Schulman and Jasuta moved again to withdraw as counsel and for the appointment of new counsel, specifically, Widder. Again, they explained that a "legal conflict" "prevent[ed] them from proceeding." They were "not," they explained, "in a position to litigate any claims pursuant to the effect of the Supreme Court's recent decision in *Martinez*." On May 1, 2012, the district court granted the motions, allowing Widder to substitute for Schulman and Jasuta as Tabler's federal counsel. The next day, Tabler, through attorney Widder, filed his notice of appeal.

While Tabler's appeal was pending, on May 28, 2013, the Supreme Court decided *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). Overturning precedent from this court to the contrary, the Court held in *Trevino* that the rule of *Martinez* applies in Texas. *Id*. at 1921; *see also Ibarra v. Thaler*, 687 F.3d 222, 227 (5th Cir. 2012), *overruled by Trevino*, 133 S. Ct. at 1916, 1921.

This court called for supplemental briefing on the effect of *Trevino*. Tabler, through attorney Widder, now contends that the conflict of interest Schulman and Jasuta faced as a result of *Martinez* and *Trevino* deprived

No. 12-70013

Tabler of his statutory right to counsel. Tabler, through Widder, asks this court to grant the requested certificate of appealability, vacate the district court's judgment, and remand to the district court for adjudication, with unconflicted counsel, of whether Schulman and Jasuta's representation during the competency-and-waiver hearing, which led to Tabler asserting no state habeas claims, was ineffective and resulted in the default of any substantial ineffective-assistance-of-trial-counsel claims.

## II.

As a habeas petitioner challenging his death sentence, Tabler has a statutory right to counsel in the federal habeas proceedings. *See* 18 U.S.C. § 3599(a)(2) (right to counsel in federal habeas proceedings "seeking to vacate or set aside a death sentence").[4] The statutory right to counsel encompasses a right to counsel who are not precluded from effective representation because of a conflict of interest. *See Martel v. Clair*, 132 S.Ct. 1276, 1286 (2012) (under § 3599, courts "have to ensure that the defendant's statutory right to counsel was satisfied throughout the litigation," and, "if the first lawyer developed a conflict," "the court would have to appoint new counsel"); *Johnson v. Gibson*, 169 F.3d 1239, 1254 (10th Cir. 1999) (a conflict of interest is "good cause" to substitute counsel under prior version of § 3599 previously codified at 21 U.S.C. § 848(q)); *Jeffers v. Lewis*, 68 F.3d 295, 298 (9th Cir.) (the right to counsel under § 848(q) "encompasses a requirement of counsel who are not disabled by conflict of interest"), *vacated en banc on other grounds*, 68 F.3d 299 (9th Cir. 1995); *accord Hanna v. Bagley*, No. 1:03-CV-801, 2014 WL 1342985, at *5 (S.D. Ohio Apr. 3, 2014) (substituting counsel under § 3599 to avoid risk of conflict).

A significant conflict of interest arises if an attorney must argue that his own representation at an earlier stage of the litigation was ineffective. *See*

---

[4] Attorneys Schulman and Jasuta were appointed by the district court as Tabler's habeas attorneys under § 3599(a)(2).

No. 12-70013

*Maples v. Thomas*, 132 S. Ct. 912, 925 n.8 (2012) (a "significant conflict of interest arose" when the circumstances were such that the law firm's "strongest argument" on behalf of the firm's client was that the firm had earlier abandoned the client); *United States v. Del Muro*, 87 F.3d 1078, 1080 (9th Cir. 1996) ("Del Muro argues on appeal that the district court created an inherent conflict of interest by forcing trial counsel to prove his own ineffectiveness . . . . We agree."); *Holmes v. Norris,* 32 F.3d 1240, 1240-41 (8th Cir.) ("One could hardly expect that lawyer to argue his own ineffectiveness with any degree of conviction or persuasiveness.  To make such an argument places a lawyer in the sharpest sort of conflict of interest."), *summarily vacated en banc,* 32 F.3d 1240 (8th Cir. 1994); *Abbamonte v. United States*, 160 F.3d 922, 925 (2d Cir. 1998) (observing that attorneys are "not inclined to seek out and assert [their] own prior ineffectiveness"); *Sasser v. Hobbs*, 735 F.3d 833, 852 (8th Cir. 2013) (similar).

Accordingly, one of our sister circuits and several district courts have recognized the logical conclusion that, in federal habeas proceedings, attorneys are conflicted from arguing their own ineffectiveness in the earlier state habeas proceedings, which *Martinez* and *Trevino* now call for.  *Gray v. Pearson*, 526 F. App'x 331, 334 (4th Cir. 2013) ("We find that a clear conflict of interest exists in requiring Gray's counsel to identify and investigate potential errors that they themselves may have made in failing to uncover ineffectiveness of trial counsel while they represented Gray in his state post-conviction proceedings."); *Juniper v. Davis*, 737 F.3d 288, 290 (4th Cir. 2013) ("[A]s in *Gray,* we find it ethically untenable to require [federal habeas] counsel to assert claims of his or her own ineffectiveness in the state habeas proceedings in order to adequately present defaulted ineffective-assistance-of-trial-counsel claims under *Martinez* in the federal habeas proceedings."); *Huebler v. Vare*, No. 3:05-CV-48, 2014 WL 1494271, at *2-3 (D. Nev. April 15, 2014) ("Following

*Martinez,* current counsel thus is placed in a position of having to review the performance of a state post-conviction litigation team on which she worked—including as an attorney—to determine whether the team inadequately failed to raise additional claims . . . .  Current counsel is under an obligation under *Martinez* to conduct such review, and she has a conflict of interest when doing so.  That conflict of interest is real, actual and current.") (quoting *Bergna v. Benedetti*, No. 3:10-CV-389, 2013 WL 3491276, at *2 (D. Nev. July 9, 2013)); *accord Farnum v. Legrand*, No. 2:13-CV-1304, 2013 WL 5817033, at *3 (D. Nev. Oct. 9, 2013); *Ferguson v. Allen*, No. 3:09-CV-138, 2014 WL 3689784, at *13 n.15 (N.D. Ala. July 21, 2014).

In *Gray*, the Fourth Circuit addressed materially identical circumstances as presented here.  There, following the petitioner's state habeas proceedings, the petitioner filed federal habeas proceedings, and "[t]he district court appointed the same attorneys who had represented Gray in the state habeas proceedings to represent him in his federal habeas proceedings." 526 F. App'x at 332.  As here, the petitioner in *Gray* contended on appeal that, as a result of *Martinez* (which, as here, was decided during the pendency of the case), he was denied his right to "the appointment of independent [*i.e.*, unconflicted] counsel in his federal habeas proceeding." *Id.*  In other words,

> Gray argues, in essence, that because he has been represented by the same counsel in both state and federal post-conviction proceedings, he is unable to identify any potential *Martinez* claims and to rely thereon to assert "cause" to excuse any such otherwise procedurally defaulted claims because in order to do so his current counsel would be required to argue their *own* ineffectiveness in their representation of him in state post-conviction proceedings. Gray maintains that such a task would create a conflict of interest that contravenes his counsels' professional ethical duties and thereby corrode their duty of vigorous representation.

*Id.* at 334. The Fourth Circuit "agree[d]" that a "clear conflict of interest" existed. *Id.* at 332, 334.

Further, the Fourth Circuit rejected the state's argument that the conflict of interest should be disregarded because Gray had, on appeal, failed to identify any "sufficiently substantial" ineffective-assistance-of-trial-counsel claims (referred to by the court as "*Martinez* claims"):

> The fact, even if true, that Gray's counsel did not identify any "sufficient[ly] substantial" claim under *Martinez* does not undercut their request that independent counsel be appointed to explore Gray's *Martinez* claims. We see no material difference between an ethical prohibition on a lawyer's attempt to *investigate or advance* her own potential errors, on the one hand, and a like prohibition on her attempts to *identify and produce a list* of her own errors giving rise to a "substantial claim" on the other hand.

*Id.* at 334-35 (quotation marks, italics, and alteration in original). Accordingly, the Fourth Circuit vacated the district court's judgment and remanded to the district court for further proceedings with unconflicted counsel. *Id.* at 335. (The Fourth Circuit later adopted *Gray*'s reasoning in a published opinion. *See Juniper*, 737 F.3d at 289.)

Tabler's case is identical. Here, as a result of *Martinez* and *Trevino*, Schulman and Jasuta, Tabler's attorneys, had a conflict of interest that precluded them from effectively representing Tabler in his federal habeas proceedings. In federal court, the only way for Tabler to claim ineffective representation at trial was to first show that his state habeas counsel, who allowed him to waive state habeas proceedings without an adversarial process to test his competency to do so, acted ineffectively in doing so. *See Martinez*, 132 S. Ct. at 1320. Schulman and Jasuta were Tabler's attorneys in both his initial state habeas proceedings and his later federal habeas proceedings. In

No. 12-70013

the federal proceedings, they were conflicted from arguing that they were ineffective in the earlier state proceedings.

In short, Tabler had a statutory right to counsel in his federal habeas proceedings, and that right was violated when the district court appointed counsel that were conflicted from litigating their own ineffectiveness in the state habeas proceedings (which was necessary to assert ineffective-assistance-of-trial-counsel claims on Tabler's behalf). This court should grant a certificate of appealability, vacate the district court's judgment, and remand to the district court so that Tabler, with unconflicted counsel (such as his current attorney, Widder), may have an opportunity to litigate state habeas counsels' alleged ineffectiveness. *Cf. Mixon v. United States*, 620 F.2d 486, 487 (5th Cir. 1980) (vacating and remanding district court's judgment because the magistrate judge had conflict of interest and, thus, "we treat the proceedings and the disposition below as a nullity").

## III.

For the reasons I have explained, the effectiveness of Tabler's state habeas attorneys (Schulman and Jasuta) is an important issue in this case, and Tabler's federal habeas attorneys (again, Schulman and Jasuta) were conflicted and unable to litigate that issue because it would require them to press their own ineffectiveness as attorneys. Nevertheless, the majority believes that we can ignore the conflict of interest that precluded Tabler's attorneys from litigating their effectiveness because the attorneys *were*, the majority decides, effective. *Ante*, at 14 ("Tabler fails to demonstrate that the performance of his state habeas counsel was constitutionally deficient."); *id.* at 17 ("Tabler's habeas counsel were not ineffective . . . ."). The majority's decision to render judgment on the effectiveness of Tabler's attorneys is stunning. That issue has never been litigated. Evidence has never been gathered, a record has never been developed, and legal arguments have never been presented to the

state courts, the federal district court, or this court. The majority's conclusion that Tabler's counsel were effective is utter speculation.

The precise issue is whether it was ineffective representation for Schulman and Jasuta during the state habeas proceedings to allow Tabler to waive his habeas rights without taking action to test his competency to do so. There are some indications in the record that Schulman and Jasuta ought to have been skeptical of Tabler's competency to make the waiver, namely, that on several prior occasions, Tabler had sought to waive his rights and volunteer for execution and then changed his mind. Indeed, after the state court accepted Tabler's waiver, Schulman and Jasuta would later come to believe that Tabler "suffers from serious mental disabilities" and "is not competent and able to make a knowing, voluntary, and intelligent waiver"—but, at that point, it was too late. *See supra*, note 3. Under *Martinez* and *Trevino*, Tabler's federal habeas attorneys should have sought to prove that the representation of the state habeas attorneys was ineffective, but that never happened here because the attorneys were conflicted from doing so. There has been no litigation, and we have no record, as to whether Tabler's state habeas attorneys provided effective representation.

It is obvious that this court cannot decide a claim of ineffective assistance of counsel on an assumption rather than actual evidence. Although that principle should require no citation, it nevertheless has ample support. *E.g.*, *United States v. Hayes*, 532 F.3d 349, 355 (5th Cir. 2008) ("Because the district court did not hold an evidentiary hearing, we would be engaging in speculation, preventing adequate review of the district court's judgment as to whether defense counsel performed unreasonably under *Strickland*."); *United States v. Culverhouse*, 507 F.3d 888, 898 (5th Cir. 2007) ("Without any evidence as to counsel's strategy, we refuse to make hindsight guesses on the matter."); *United States v. Herrera*, 412 F.3d 577, 582 (5th Cir. 2005) ("Rather than decide

the question based on an assumption, the better approach is to have the district court conduct an evidentiary hearing."); *United States v. Bramlett*, 191 F. App'x 271, 272 (5th Cir. 2006) ("Resolution of Bramlett's ineffective assistance of counsel claim turns on a factual issue, namely, whether his trial counsel informed him of the statutory maximum sentence. The district court has made no factual findings with regard to this issue. This court should not make that factual assessment in the first instance."). Despite this precedent, the majority purports to do what the law does not allow: it renders judgment on the effectiveness of Tabler's state habeas attorneys, an issue for which we have no record, based on utter speculation.

When, as here, a litigant has the right to an attorney, the problem with that attorney having a conflict of interest is that it undermines or defeats the adversary process upon which our judicial system is premised. Courts decide cases based on records amassed and presented by adverse parties. If one side's performance was hampered by a conflict of interest, the court is left with a record that is inadequate for rendering decision in accordance with the usual adversarial process. *See Satterwhite v. Texas,* 486 U.S. 249, 256 (1988) ("Since the scope of a violation such as a deprivation of the right to conflict-free representation cannot be discerned from the record, any inquiry into its effect on the outcome of the case would be purely speculative."); *United States v. Segarra-Rivera*, 473 F.3d 381, 384 (1st Cir. 2007) (explaining that the issue of an attorney conflict was "logically antecedent" to the substantive question the district court faced because, if the attorney was conflicted, "it would cast doubt upon the validity of the record on which the district court ruled"). The majority's approach here turns the adversary system on its head. Tabler's federal habeas attorneys were conflicted from litigating the ineffectiveness of Tabler's state habeas attorneys, and they *did not litigate* that issue. This court cannot ignore the conflict for the reason that, from our vantage point, the

representation of Tabler's state habeas attorneys appears to have been fine. We have no record upon which to decide that, and we cannot, in accordance with due process, "decide the question based on an assumption." *Herrera*, 412 F.3d at 582. The majority's approach, which decides unlitigated claims on assumptions about their merits in order to affirm the lack of adversarial litigation, "puts the cart before the horse." *Segarra-Rivera*, 473 F.3d at 384. The law requires that Tabler have the assistance of *unconflicted* counsel to press his legal claims. *See* 18 U.S.C. § 3599(a)(2). Only *after* those claims are asserted *by Tabler's counsel*, as is his right, may this court decide the merits of those claims.[5]

## IV.

This court may bristle at the prospect of delaying execution of the state court's judgment of death while Tabler proceeds through a second round of federal habeas proceedings. But it is this court's duty to apply the law, not abstract principles of fairness or policy. Congress has provided Tabler with the right to an attorney in his federal habeas proceedings, and that right was violated when Tabler was afforded counsel who were conflicted from effective

---

[5] The majority seems to suggest that we can render judgment on Tabler's unlitigated claim of ineffective assistance because Tabler was appointed a new, unconflicted attorney on appeal (that is, to request a certificate of appealability from this court), and *that* attorney could have theoretically researched outside the record to prepare attorney-ineffectiveness claims for assertion in this appellate court that were not previously asserted in the district court. *See ante*, at 16 ("Tabler was appointed independent counsel for his federal appeal who has had the opportunity to investigate and present these claims."). This, again, is clear error. "The general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir. 1987). We cannot fault Tabler's appellate attorney for failing to assert attorney-ineffectiveness claims on appeal that were not previously asserted in the district court when our precedent does not allow such, as this court has said time and again. *See, e.g.*, *United States v. London*, 568 F.3d 553, 562 (5th Cir. 2009); *United States v. Brewster*, 137 F.3d 853, 859 (5th Cir. 1998); *United States v. Thomas*, 12 F.3d 1350, 1368 (5th Cir. 1994); *United States v. Owen*, 418 F. App'x 285, 287 (5th Cir. 2011).

representation.  Contrary to the majority's conclusion, we cannot ignore that legal error.  I respectfully dissent.