# SUPREME COURT OF THE UNITED STATES

## RICHARD GERALD JORDAN *v.* MARSHALL L. FISHER, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 14–8035.  Decided June 29, 2015

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE GINSBURG and JUSTICE KAGAN join, dissenting from the denial of certiorari.

Three times, the same prosecutor sought and obtained a death sentence against petitioner Richard Jordan. And each time, a court vacated that sentence. After Jordan's third successful appeal, the prosecutor entered into a plea agreement whereby Jordan would receive a sentence of life without the possibility of parole. When the Mississippi Supreme Court later invalidated that agreement, Jordan requested that the prosecutor reinstate the life-without-parole deal through a new plea. The prosecutor refused. Jordan was then retried and again sentenced to death.

Jordan applied for federal habeas corpus relief on the ground that the prosecutor's decision to seek the death penalty after having agreed to a lesser sentence was unconstitutionally vindictive. The District Court denied Jordan's petition, and the Court of Appeals for the Fifth Circuit, in a divided decision, denied Jordan's request for a certificate of appealability (COA). Because the Fifth Circuit clearly misapplied our precedents regarding the issuance of a COA, I would grant Jordan's petition and summarily reverse the Fifth Circuit's judgment.

# I

## A

In 1976, Jordan was arrested for the abduction and murder of Edwina Marter. Jackson County Assistant District Attorney Joe Sam Owen led the prosecution. The jury convicted Jordan of capital murder, and, under then-applicable Mississippi law, he automatically received a sentence of death. After Jordan's sentence was imposed, however, the Mississippi Supreme Court held that automatic death sentences violated the Eighth Amendment. See *Jackson* v. *State*, 337 So. 2d 1242, 1251–1253 (1976) (citing *Gregg* v. *Georgia*, 428 U. S. 153 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Jordan was accordingly granted a new trial.

Owen continued to serve as the lead prosecutor at Jordan's second trial. Jordan was again convicted of capital murder and sentenced to death. The Fifth Circuit later determined, however, that the jury had been improperly instructed on the imposition of the death penalty. *Jordan* v. *Watkins*, 681 F. 2d 1067 (1982). The court therefore set aside Jordan's sentence.

Jordan's new sentencing trial was held in 1983. By this point, Owen had left the district attorney's office for private practice. But at the behest of Marter's family, Owen agreed to represent the State as a special prosecutor. A jury once more sentenced Jordan to death, but this Court subsequently vacated the decision upholding that sentence and remanded for reconsideration in light of *Skipper* v. *South Carolina*, 476 U. S. 1 (1986). See *Jordan* v. *Mississippi*, 476 U. S. 1101 (1986).

Rather than pursue yet another sentencing trial, Owen entered into a plea agreement with Jordan: Jordan would be sentenced to life without the possibility of parole in exchange for his promise not to challenge that sentence. In support of the agreement, Owen stipulated to several mitigating circumstances, including Jordan's remorse, his

record of honorable service and disability incurred in the military during the Vietnam War, his good behavior in prison, and his significant contributions to society while incarcerated. 1 Postconviction Record 20–21. The trial court accepted the plea and, in December 1991, Jordan was sentenced to life without parole.

As it turned out, this sentence, too, was defective. At the time the parties reached their plea agreement, Mississippi's sentencing statutes authorized a term of life without parole only for those defendants who—unlike Jordan— had been found to be habitual offenders. Citing this statutory gap, the Mississippi Supreme Court held in an unrelated case that a plea agreement materially identical to Jordan's violated Mississippi public policy. *Lanier* v. *State*, 635 So. 2d 813 (1994). Such agreements, the court explained, were "void *ab initio*," and thus the parties were "placed back in the positions which they occupied prior to entering into the agreement." *Id.,* at 816–817.

Following the decision in *Lanier*, Jordan filed a *pro se* motion with the trial court seeking to remedy his unlawful sentence by changing its term from life without parole to life with the possibility of parole. While the motion was pending, the Mississippi Legislature amended the State's criminal code to permit sentences of life without parole for all capital murder convictions. See 1994 Miss. Laws p. 851 (amending Miss. Code. Ann. §97–3–21). The Mississippi Supreme Court ultimately agreed with Jordan that his sentence was invalid under *Lanier* and remanded the case for resentencing. *Jordan* v. *State*, 697 So. 2d 1190 (1997) (table).

On remand, Jordan asked Owen (reprising his role as special prosecutor) to reinstate their earlier life-without-parole agreement based on the recent amendment to Mississippi law. Jordan, in return, would agree to waive his right to challenge the retroactive application of that amendment to his case. Jordan had good reason to believe

that his request would be granted: Three other Mississippi
capital defendants had successfully petitioned to have
their plea agreements invalidated under the logic of *La-
nier*. Each had committed crimes at least as serious as
Jordan's,[1] and each had received a life sentence after their
successful appeals. Yet Owen refused to enter into the
same agreement he had previously accepted, instead
seeking the death penalty at a new sentencing trial.
Owen later explained that he had declined to negotiate
because he felt Jordan had violated their original agree-
ment by asking the trial court to modify his sentence. See
*Jordan* v. *State*, 786 So. 2d 987, 1000 (Miss. 2001).

Jordan filed a motion contending that Owen had sought
the death penalty as retaliation for Jordan's exercise of his
legal right to seek resentencing under *Lanier*. See *Black-
ledge* v. *Perry*, 417 U. S. 21, 28–29 (1974) (recognizing the
Due Process Clause's prohibition of prosecutorial vindic-
tiveness). The trial court denied the motion, and Jordan
received a death sentence.

Jordan continued to pursue his prosecutorial vindictive-
ness claim on direct appeal to the Mississippi Supreme
Court. That court rejected Jordan's argument, noting,
among other things, that its previous decision in Jordan's
case had left open the possibility that Owen could seek the
death penalty. *Jordan* v. *State*, 786 So. 2d, at 1001. Jus-
tice Banks dissented, contending that Jordan's allegations
were sufficiently troubling to merit an evidentiary hear-
ing. *Id.,* at 1031–1032.

B

After exhausting his postconviction remedies in the
state courts, Jordan initiated a federal habeas corpus

---

[1] See *Lanier* v. *State*, 635 So. 2d 813, 815 (Miss. 1994) (assaulting,
kidnaping, and murdering a police officer); *Stevenson* v. *State*, 674
So. 2d 501, 502 (Miss. 1996) (stabbing to death a prison deputy); *Patter-
son* v. *State*, 660 So. 2d 966, 967 (Miss. 1995) (kidnaping and murder).

proceeding in the Southern District of Mississippi. The District Court denied relief on each of the claims in Jordan's petition, including his vindictiveness claim. *Jordan* v. *Epps*, 740 F. Supp. 2d 802, 819 (2010). With respect to that claim, the District Court opined that Owen could not have been vindictive because he "did not substitute a different charge for the charge that was originally imposed, nor did he seek a different penalty than that originally sought." *Ibid.* The District Court also declined to issue a COA. App. to Pet. for Cert. 149a.

Jordan renewed his efforts to obtain a COA on his vindictiveness claim in an application to the Fifth Circuit, but the court denied the request. *Jordan* v. *Epps*, 756 F. 3d 395 (2014). The Fifth Circuit held that Jordan had "fail[ed] to prove" actual vindictiveness by Owen because "it is not vindictive for a prosecutor to follow through on a threat made during plea negotiations." *Id.,* at 406 (citing *Bordenkircher* v. *Hayes*, 434 U. S. 357, 363–364 (1978)). The court further held that its decision in *Deloney* v. *Estelle*, 713 F. 2d 1080 (1983), precluded it from applying a presumption of vindictiveness. *Deloney*, the court reasoned, stood for the proposition that there could be no claim for prosecutorial vindictiveness "absent an increase in charges beyond those raised in the original indictment." 756 F. 3d, at 408.

In rejecting Jordan's legal arguments, the Fifth Circuit acknowledged that the Ninth Circuit, sitting en banc, had granted habeas relief to a capital defendant raising a similar vindictiveness claim. See *id.,* at 411, n. 5 (citing *Adamson* v. *Ricketts*, 865 F. 2d 1011 (1988)). "While the Ninth Circuit may have taken a different approach to this question," the Fifth Circuit maintained that it was bound by its contrary precedent. 756 F. 3d, at 411, n. 5.

Judge Dennis filed an opinion dissenting in relevant part. He began by stressing that the court was "not called upon to make a decision on the ultimate merits of Jordan's

prosecutorial vindictiveness claim." *Id.,* at 416 (opinion concurring in part and dissenting in part). Judge Dennis went on to explain why, as he saw it, Jordan had "shown sufficient merit to the prosecutorial vindictiveness claim to warrant his appeal being considered on the merits." *Id.,* at 422.

## II

## A

In contrast to an ordinary civil litigant, a state prisoner who seeks a writ of habeas corpus in federal court holds no automatic right to appeal from an adverse decision by a district court. Under the Antiterrorism and Effective Death Penalty Act of 1996, a would-be habeas appellant must first obtain a COA. 28 U. S. C. §2253(c)(1).

The COA statute permits the issuance of a COA only where a petitioner has made "a substantial showing of the denial of a constitutional right." §2253(c)(2). Our precedents give form to this statutory command, explaining that a petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack* v. *McDaniel*, 529 U. S. 473, 484 (2000) (quoting *Barefoot* v. *Estelle*, 463 U. S. 880, 893, n. 4 (1983) (some internal quotation marks omitted)). Satisfying that standard, this Court has stated, "does not require a showing that the appeal will succeed." *Miller-El* v. *Cockrell*, 537 U. S. 322, 337 (2003). Instead, "[a] prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Id.,* at 338 (internal quotation marks omitted).

We have made equally clear that a COA determination is a "threshold inquiry" that "does not require full consideration of the factual or legal bases adduced in support of

the claims." *Id.,* at 336. This insistence on limited review is more than a formality: The statute mandates that, absent a COA, "an appeal may not be taken to the court of appeals." §2253(c)(1). Thus, "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." *Id.,* at 336.

B

Although the Fifth Circuit accurately recited the standard for issuing a COA, its application of that standard in this case contravened our precedents in two significant respects.

To start, the Fifth Circuit was too demanding in assessing whether reasonable jurists could debate the District Court's denial of Jordan's habeas petition. Two judges— first Justice Banks, and later Judge Dennis—found Jordan's vindictiveness claim highly debatable. And the en banc Ninth Circuit, presented with a similar claim in a comparable procedural posture, had granted relief. Those facts alone might be thought to indicate that reasonable minds could differ—*had differed*—on the resolution of Jordan's claim. Cf. Rule 22.3 (CA3 2011) ("[I]f any judge on the panel is of the opinion that the applicant has made the showing required by 28 U. S. C. §2253, the certificate will issue"); *Jones* v. *Basinger*, 635 F. 3d 1030, 1040 (CA7 2011) ("When a state appellate court is divided on the merits of the constitutional question, issuance of a certificate of appealability should ordinarily be routine").

The Fifth Circuit nevertheless rejected Jordan's vindictiveness argument, finding the claim foreclosed by its prior decision in *Deloney*, 713 F. 2d 1080. As Judge Dennis' dissent shows, however, *Deloney* (and the restrictive gloss it placed on this Court's *Blackledge* decision) is susceptible of more than one reasonable interpretation. The defendant there entered into a plea agreement that reduced the charges against him. Later, the defendant not

only backed out of his agreement with prosecutors, he insisted on proceeding to trial, undermining the entire purpose of the earlier plea-bargaining process. 713 F. 2d, at 1081. When that trial resulted in a conviction, the defendant alleged that the prosecutor had no right to try him on the original, pre-plea-bargain charges. *Id.,* at 1085. Unsurprisingly, the Fifth Circuit disagreed; it held that the defendant could not "bootstrap" his earlier efforts to obtain a lesser sentence into a vindictiveness claim. *Ibid.*

Jordan's situation is materially different. No one disputes that Jordan, like Deloney, attempted to alter the terms of his plea agreement. But he did so only because the Mississippi Supreme Court's decision in *Lanier* rendered invalid his life-without-parole sentence. In light of *Lanier*, either Jordan or Owen should have asked to vacate Jordan's invalid sentence; Jordan simply moved first. Moreover, and again in contrast to the defendant in *Deloney*, Jordan never attempted to deprive the State of the benefit of its earlier bargain. Once Mississippi law changed, Jordan was willing to return to the *status quo ante*: He offered to accept the same sentence of life without parole. It was Owen, the prosecutor, who demanded a fourth trial. On these facts, it is far from certain that *Deloney* precludes Jordan from asserting a claim of prosecutorial vindictiveness.

In any event, Jordan's reading of the Fifth Circuit's case law need not be the best one to allow him to obtain further review. "[M]eritorious appeals are a subset of those in which a certificate should issue," *Thomas* v. *United States*, 328 F. 3d 305, 308 (CA7 2003), not the full universe of such cases. "It is consistent with §2253 that a COA will issue in some instances where there is no certainty of ultimate relief." *Miller-El*, 537 U. S., at 337. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case

received full consideration, that the petitioner will not prevail." *Id.,* at 338. The possibility that Jordan's claim may falter down the stretch should not necessarily bar it from leaving the starting gate.

The Fifth Circuit's second, and more fundamental, mistake was failing to "limit its examination to a threshold inquiry." *Id.,* at 327. "[A] COA ruling is not the occasion for a ruling on the merit of [a] petitioner's claim." *Id.,* at 331. It requires only "an overview of the claims in the habeas petition and a general assessment of their merits." *Id.,* at 336.

Here, the Fifth Circuit engaged in precisely the analysis *Miller-El* and the COA statute forbid: conducting, across more than five full pages of the Federal Reporter, a detailed evaluation of the merits and then concluding that because Jordan had "fail[ed] to prove" his constitutional claim, 756 F. 3d, at 407, a COA was not warranted. But proving his claim was not Jordan's burden. When a court decides whether a COA should issue, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U. S., at 342. Where, as here, "a court of appeals sidesteps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction." *Id.,* at 336–337.[2]

————————

[2] This is not the first time the Fifth Circuit has denied a COA after engaging in an extensive review of the merits of a habeas petitioner's claims. See*, e.g., Tabler* v. *Stephens*, 588 Fed. Appx. 297 (2014); *Reed* v. *Stephens*, 739 F. 3d 753 (2014); *Foster* v. *Quarterman*, 466 F. 3d 359 (2006); *Ruiz* v. *Quarterman*, 460 F. 3d 638 (2006); *Cardenas* v. *Dretke*, 405 F. 3d 244 (2005). Nor is it the first time the Fifth Circuit has denied a COA over a dissenting opinion. See, *e.g., Tabler*, 588 Fed. Appx. 297; *Jackson* v. *Dretke*, 450 F. 3d 614 (2006). Although I do not intend to imply that a COA was definitely warranted in each of these cases, the pattern they and others like them form is troubling.

\*    \*    \*

The barrier the COA requirement erects is important, but not insurmountable.  In cases where a habeas petitioner makes a threshold showing that his constitutional rights were violated, a COA should issue.  I believe Jordan has plainly made that showing.  For that reason, I would grant Jordan's petition and summarily reverse the Fifth Circuit's judgment.  I respectfully dissent from the denial of certiorari.