# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-DR-00989-SCT

*RICHARD GERALD JORDAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/24/1998 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR PETITIONER: | DAVID P. VOISIN |
| | JAMES W. CRAIG |
| ATTORNEY FOR RESPONDENT: | OFFICE OF ATTORNEY GENERAL |
| | BY: JASON L. DAVIS |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST-CONVICTION |
| DISPOSITION: | SECOND SUCCESSIVE PETITION FOR POST-CONVICTION RELIEF DENIED - 12/06/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. Richard Gerald Jordan was sentenced to death following his conviction on charges of kidnapping and murdering Edwina Marter in 1976. In his Second Successive Petition for Post-Conviction Relief, Jordan challenges the Mississippi Department of Corrections' (MDOC) using midazolam as the first drug in its three-drug lethal-injection protocol. According to Jordan, midazolam does not meet the requirements set forth in Mississippi Code Section 99-19-51(1) (Supp. 2018), which directs MDOC to use "an appropriate

anesthetic or sedative" as the first drug. Because Jordan failed to provide sufficient support to warrant an evidentiary hearing, his petition is denied.

## FACTS AND PROCEDURAL HISTORY

¶2. In January 1976, Jordan traveled to Gulfport, contacted a local bank, and asked to speak with a loan officer. After Jordan spoke with Charles Marter, the loan officer, Jordan found Marter's home address in a phone book and went to Marter's home. Pretending to be a phone-company employee, Jordan entered Marter's home. Marter's wife, Edwina Marter, and their three-year-old child were home. Jordan abducted Edwina from the home and forced her to drive to a secluded area in the DeSoto National Forest.

¶3. Jordan fatally shot Edwina in the back of the head. He then called Charles, informed Charles that he had kidnapped Edwina, and requested $25,000 in ransom. Jordan assured Charles that Edwina was alive and concerned for her children. After multiple attempts, Jordan retrieved the ransom money. He was arrested the following day. Jordan confessed to the crime and told investigators where to find Edwina's body.

¶4. A jury convicted Jordan of capital murder in 1976. Shortly thereafter, the law of capital trials changed, requiring separate trials for the guilt and sentence phases. *See Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976); *Jackson v. State*, 337 So. 2d 1242 (Miss. 1976), *superseded by statute on other grounds as recognized in Gray v. State*, 351 So. 2d 1342 (Miss. 1977). In accordance with *Jackson*, Jordan was retried and again convicted of capital murder and sentenced to death. We affirmed Jordan's conviction and sentence. *Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

¶5.    Finding that the sentencing-phase jury instructions did not provide clear and objective standards for aggravating factors, the United States Court of Appeals for the Fifth Circuit vacated Jordan's sentence on petition for writ of habeas corpus and remanded for resentencing. *Jordan v. Watkins*, 681 F.2d 1067 (5th Cir. 1982). In 1983, Jordan was sentenced to death again. We affirmed. *Jordan v. State*, 464 So. 2d 475 (Miss. 1985). Finding that Jordan had not been allowed to present evidence of good behavior, the United States Supreme Court vacated Jordan's death sentence. *Jordan v. Mississippi*, 476 U.S. 1101, 106 S. Ct. 1942, 90 L. Ed. 2d 352 (1986). *See also* *Skipper v. South Carolina*, 476 U.S. 1, 106 S. Ct. 1669, 90 L. Ed. 2d 1 (1986).

¶6.    On remand, Jordan entered into an agreement with the State to accept a sentence of life imprisonment without the possibility of parole. A few years later, Jordan filed a motion for post-conviction relief, asking that his sentence be corrected or amended to a sentence of life imprisonment with the possibility of parole under *Lanier v. State*, 635 So. 2d 813 (Miss. 1994), *overruled on other grounds by* *Twillie v. State*, 892 So. 2d 187 (Miss. 2004). Because life without parole was not an option under the controlling statute at that time—Mississippi Code Section 97-3-21 (1987)—we remanded for another sentencing trial. *Jordan v. State*, No. 95-KP-00113-SCT (Miss. Aug. 7, 1997). Jordan was sentenced to death again, and we affirmed the sentence. *Jordan v. State*, 786 So. 2d 987 (Miss. 2001). The United States Supreme Court denied Jordan's petition for writ of certiorari. *Jordan v. Mississippi*, 534 U.S. 1085, 122 S. Ct. 823, 151 L. Ed. 2d 705 (2002).

3

¶7.    Jordan filed an application for post-conviction relief, which this Court denied. ***Jordan v. State***, 912 So. 2d 800 (Miss. 2005). Then, Jordan sought habeas corpus relief in the United States District Court for the Southern District of Mississippi. In 2010, the district court denied habeas relief and Jordan's request for a certificate of appealability (COA). ***Jordan v. Epps***, 740 F. Supp. 2d 802 (S.D. Miss. 2010). Jordan then asked the Fifth Circuit to grant a COA; in 2014, the Fifth Circuit denied relief.[1] ***Jordan v. Epps***, 756 F.3d 395 (5th Cir. 2014). Next, Jordan filed a petition for writ of certiorari with the United States Supreme Court. Before the Supreme Court ruled on Jordan's petition, Jordan filed an action, pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of Mississippi, challenging Mississippi's lethal-injection protocol. ***Jordan v. Fisher***, No. 3:15-cv-00295-HTW-LRA. The United States Supreme Court denied Jordan's petition for writ of certiorari on June 29, 2015. ***Jordan v. Fisher***, 135 S. Ct. 2647, 192 L. Ed. 2d 948 (2015).

¶8.    While Jordan's § 1983 case was pending in district court, on July 28, 2015, the State filed a Motion to Reset Execution Date in this Court. Before this Court ruled on the State's motion, the district court entered an injunction preventing the State from using "pentobarbitol, specifically in its compounded form, or midazolam, to execute any death row inmate." ***Jordan***, No. 3:15-cv-00295-HTW-LRA. The State appealed the district court's order, and the Fifth Circuit vacated the injunction and remanded. ***Jordan v. Fisher***, 823 F.3d 805 (5th Cir. 2016).

---

[1] Jordan requested a COA on issues related to ineffective assistance of counsel and prosecutorial vindictiveness.

4

¶9. Jordan filed another petition for writ of certiorari on September 26, 2016. The Supreme Court denied Jordan's petition on February 21, 2017. *Jordan v. Fisher*, 137 S. Ct. 1069, 197 L. Ed. 2d 188 (2017). Jordan's § 1983 suit remains pending before the district court.

¶10. In 2016, Jordan filed another petition for post-conviction relief with this Court. *Jordan v. State*, 224 So. 3d 1252 (Miss. 2017). He raised two issues: (1) whether the State's use of midazolam as part of the three-drug lethal-injection protocol violated Mississippi Code Section 99-19-51 because it is not an "ultra-short acting barbiturate or other similar drug," and (2) whether execution of an inmate more than forty years after he was first sentenced to death violates the Eighth Amendment's prohibition against cruel and unusual punishment. At the time Jordan filed his petition, Section 99-19-51 required MDOC to use an "ultra-short acting barbiturate or other similar drug" as the first drug of the lethal-injection protocol.

¶11. While the petition was pending before this Court, the Mississippi Legislature amended Section 99-19-51. The amendment substituted the requirement for an "ultra-short acting barbiturate or other similar drug" for the current mandate that MDOC use an "appropriate anesthetic or sedative[.]" Miss. Code Ann. 99-19-51(1) (Supp. 2018). Due to the amendment, this Court concluded that Jordan's statutory-based challenge was moot and "decline[d] to address whether midazolam is or is not a permissible drug under the current statute." *Jordan*, 224 So. 3d at 1253. Regarding the second issue, this Court denied relief, finding that the forty-year delay does not amount to cruel and unusual punishment. *Id.*

¶12. Jordan filed a petition for writ of certiorari in the United States Supreme Court, challenging this Court's decision to deny relief for the second issue. He raised two issues in that petition: (1) "Whether incarcerating a prisoner over four decades awaiting execution, even after the State found at one point that a life without parole sentence was appropriate, violates the Eighth Amendment because it fails to serve any legitimate purposes"; and (2) "Whether incarcerating a prisoner over four decades awaiting execution, with over half that time attributable to repeated constitutional violations in a succession of sentencing hearings, violates the Eighth Amendment because it fails to serve any legitimate penological purpose[.]" The Supreme Court denied Jordan's petition on June 28, 2018. *Jordan v. Mississippi*, 138 S. Ct. 2567 (2018).

**DISCUSSION**

¶13. By statute, Mississippi employs a multi-drug protocol in executions. Miss. Code Ann. § 99-19-51(1). Death by lethal injection "shall be by the sequential intravenous administration of a lethal quantity of the following combination of substances: (a) *an appropriate anesthetic or sedative*; (b) a chemical paralytic agent; and (c) potassium chloride, or other similarly effective drug, until death is pronounced . . . ." *Id.* (emphasis added). "'[A]ppropriate anesthetic or sedative' means any substance that, if properly administered in a sufficient quantity, is *likely to render the condemned inmate unconscious, so that the execution process should not entail a substantial risk of severe pain*." *Id.* (emphasis added). The current MDOC death-penalty protocol provides for the following drugs:

6

| Phase | Possible Drugs | Intended Use/Effect |
|-------|----------------|---------------------|
| 1 | • Sodium Pentothal, or<br>• Pentobarbital, or<br>• Midazolam | Render the Inmate Unconscious and Insensate to Pain |
| 2 | • Pavulon, or<br>• Vecuronium Bromide | Paralytic |
| 3 | • Potassium Chloride | Cardiac Arrest |

¶14. For the first phase, MDOC has been unable to obtain sodium pentothal or pentobarbital. Due to the drugs' unavailability on June 28, 2015, MDOC amended the execution protocol to include a 500-milligram dose of midazolam as the first-phase drug.

¶15. Jordan asserts MDOC's proposed 500-milligram dose of midazolam will not render him "unconscious, so that the execution process should not entail a substantial risk of severe pain." Miss. Code Ann. § 99-19-51(1). In support, he submits Dr. Craig Stevens's affidavits. The State, in response, maintains that a 500-milligram dose of midazolam will render an inmate completely unconscious and insensate to pain. And the State submits Dr. Richard Antognini's affidavit to support its position.

¶16. Although Jordan frames the issue as a state-law challenge, we find instructive the United States Supreme Court's decision in *Glossip v. Gross*, 135 S. Ct. 2726, 192 L. Ed. 2d 761 (2015). There, the Supreme Court rejected the petitioners' Eighth Amendment challenge to Oklahoma's using midazolam, in part because the petitioners failed to identify alternative and available drugs that Oklahoma could use. *Id.* at 2738. Moreover, the Court reaffirmed its holding in *Baze v. Rees*, 553 U.S. 35, 48, 128 S. Ct. 1520, 1530, 170 L. Ed. 2d 420

7

(2008)–that the petitioner must identify a known and available alternative method of execution which presents less risk than the method challenged.

¶17. The *Glossip* Court also denied relief on another ground, which is central to the issue presented in today's case: the Oklahoma district court did not commit clear error by finding that midazolam is "highly likely to render a person unable to feel pain during execution." *Glossip*, 135 S. Ct. at 2739.

¶18. Dr. Stevens opines that midazolam does not meet the standards set forth in Section 99-19-51(1) because it does not produce a state of general anesthesia or "maximal depression of consciousness[.]" Thus, Jordan asserts that midazolam is not "likely to render [him] unconscious, so that the execution process should not entail a substantial risk of severe pain." Miss. Code Ann. § 99-19-51(1).

¶19. Although it did not address the state-law-based challenge presented here, the Supreme Court rejected squarely the substance of Jordan's argument. *See Glossip*, 135 S. Ct. at 2741-42 (low doses of midazolam are sufficient to induce unconsciousness and are even sometimes used as the sole relevant drug in certain medical procedures). The Court reasoned,

> Petitioners emphasize that midazolam is not recommended or approved for use as the sole anesthetic during painful surgery, but there are two reasons why this is not dispositive. First, as the District Court found, the 500-milligram dose at issue here "is many times higher than a normal therapeutic dose of midazolam." The effect of a small dose of midazolam has minimal probative value about the effect of a 500-milligram dose. Second, the fact that a low dose of midazolam is not the *best* drug for maintaining unconsciousness during surgery says little about whether a 500-milligram dose of midazolam is *constitutionally adequate* for purposes of conducting an execution. We recognized this point in *Baze*, where we concluded that although the medical standard of care might require the use of a blood pressure cuff and an

8

electrocardiogram during surgeries, this does not mean those procedures are required for an execution to pass Eighth Amendment scrutiny.

*Id.* at 2742 (emphasis in original) (citation omitted).

¶20. Moreover, the Court also rejected the Oklahoma petitioners' argument based on midazolam's "ceiling effect." *Id.* at 2742-44. In sum, the petitioners argued "that midazolam has a 'ceiling' above which any increase in dosage produces no effect." *Id.* at 2743. The Supreme Court concluded that "the mere fact that midazolam has such a ceiling cannot be dispositive." *Id.* Instead, "[t]he relevant question here is whether midazolam's ceiling effect occurs below the level of a 500-mg dose and at a point at which the drug does not have the effect of rendering a person insensate to pain caused by the second and third drugs." *Id.* The Court found the petitioners provided little probative evidence and that the evidence they did present was speculative. *Id.* For example, one of the petitioners' experts conceded that he "was unable to determine the midazolam dose for a ceiling effect on unconsciousness because there is no literature in which such testing has been done." *Id.*

¶21. Here, Dr. Stevens sets forth the same assertion in his affidavit. And, like the evidence presented in *Glossip*, Dr. Stevens does not cite probative support for his conclusion. Instead, he relies on non-human studies and calculations that admittedly cannot be confirmed in human trials. Further, Dr. Stevens focuses his complaint about midazolam, in part, on the fact that it is an not an "anesthetic." The statute clearly calls for an "appropriate anesthetic *or sedative*" in phase one of the lethal-injection protocol. Miss. Code Ann. § 99-19-51(1) (emphasis added). As pointed out by Dr. Antognini, "midazolam can result in unconsciousness, coma, respiratory arrest, and death, . . . especially at greater doses." The

9

dose prescribed in MDOC's lethal-injection protocol—500-milligrams of midazolam—is about one hundred to two hundred times the normal therapeutic dose. According to Dr. Antognini, "a person given 500 mg midazolam would be rendered completely unconscious and insensate to pain and noxious stimuli." Thus, "there is only an exceedingly small risk that a person administered a 500 mg dose of midazolam would experience any pain . . . as a result of . . . the administration of drug, including vecuronium bromide and potassium chloride."

¶22. Finally, Mississippi's lethal-injection statute and protocol are comparable with other states' protocols. *See Glossip*, 135 S. Ct. at 2739-40 ("numerous courts have concluded that the use of midazolam as the first drug in a three-drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium chloride"). As the Fifth Circuit recognized in Jordan's § 1983 action,

> Mississippi's statutory requirements and the associated lethal injection protocol are not "atypical . . . in relation to the ordinary" in comparison with other states' execution protocols. The three-drug protocol and the particular drugs Mississippi proposes to use (midazolam, a paralytic, and potassium chloride) are typical for those states that use lethal injection and were recently upheld in the face of a constitutional challenge.

*Jordan*, 823 F.3d at 811-12 (quoting *Glossip*, 135 S. Ct. at 2735).

**CONCLUSION**

¶23. After considering Jordan's petition and Dr. Stevens's supporting affidavits, along with *Glossip*, we find that Jordan has failed to set forth sufficient evidence to warrant an evidentiary hearing. Jordan has failed to provide credible evidence to support the contention

10

that midazolam does not meet the statutory requirements in Mississippi Code Section 99-19-51(1). Therefore, Jordan's Second Successive Petition for Post-Conviction Relief is denied.

¶24. **SECOND SUCCESSIVE PETITION FOR POST-CONVICTION RELIEF IS DENIED.**

**RANDOLPH, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, JUSTICE, DISSENTING:**

¶25. The sole issue in this case is whether Richard Jordan is entitled to an evidentiary hearing on his petition for post-conviction relief. This Court need not and should not reach the merits of his petition, because he is entitled to an evidentiary hearing in the trial court. Accordingly, I respectfully dissent.

¶26. As the majority acknowledges, the parties disagree about whether a 500-milligram dose of midazolam is an "appropriate anaesthetic or sedative" that will render Jordan "unconscious, so that the execution process should not entail a substantial risk of severe pain" pursuant to state statute. Miss. Code Ann. § 99-19-51(1) (Supp. 2018); Maj. Op. ¶ 15. Jordan presents two affidavits from Dr. Craig Stevens to support his argument that midazolam is incapable of rendering an inmate unconscious and insensate to pain. The State presents Dr. Richard Antognini's affidavit, in which he opines that 500 milligrams of midazolam will render an inmate "completely unconscious and insensate to pain."

¶27. When a petitioner and the State produce contradictory affidavits in post-conviction proceedings, an evidentiary hearing should be ordered when the contested facts are material and the affidavit produced by the petitioner is not a "sham." *Wright v. State*, 577 So. 2d 387,

11

390 (Miss. 1991) ("In order for a contested fact to require an evidentiary hearing it must be material. Moreover, where an affidavit is overwhelmingly belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary to the extent that the court can conclude that the affidavit is a sham no hearing is required."); *see also Neal v. State*, 525 So. 2d 1279, 1281 n.2 (Miss. 1987) ("Post-conviction actions employ many of the procedural trappings of a civil action. . . . As in civil actions, we do not resolve genuine issues of material fact by a process of trial by affidavit.").[2]

¶28. Jordan frames the issue as a "simple matter of enforcing the statutory command." He clarifies that the instant petition does not raise an Eighth Amendment method-of-execution challenge, but that it is grounded solely in state law.

---

[2] In *Neal*, Justice Robertson explained in his separate opinion that the State should respond to a petitioner's affidavit in PCR proceedings by showing that an evidentiary hearing is not warranted, not by presenting a contradictory affidavit:

> The State appears to be of the view that its function in responding to a post-conviction application is to present counter affidavits which contradict and overcome petitioner's affidavits. But this is not the case at all, for we do not engage in trial by affidavits here any more than any other proceeding. The State would be better advised to direct its responses to the idea that an evidentiary hearing is not required, that is, to the proposition that either the petitioner's showing is not in proper form or that the facts he alleges are supported by affidavits suggesting no reasonable possibility that at an evidentiary hearing [the petitioner] may be able to establish a claim for relief from his sentence or conviction. The counter affidavit process is at the very earliest one in which the State should engage in connection with a motion for summary judgment. Miss. Code Ann. § 99-39-19(2) (Supp. 1986).

*Neal*, 525 So. 2d at 1287 (Robertson, J., concurring in part, dissenting in part).

¶29.	The majority of cases that discuss midazolam address constitutional arguments.	*See*

***Glossip v. Gross***, 135 S. Ct. 2726, 2739-40, 192 L. Ed. 2d 761 (2015).  Here, the majority

argues that ***Glossip*** is instructive to the state-law claim at issue. The Court in ***Glossip***,

however, was not presented with a state-law based claim; instead, it considered whether

midazolam violates the Eighth Amendment.  The petitioners in ***Glossip*** were on death row

in Oklahoma.  ***Id.*** at 2735.  In contrast to section 99-19-51's requirement that the State of

Mississippi use "an appropriate anesthetic or sedative[,]" Oklahoma's statute does not

contain a specific directive.  Oklahoma's statute provides, "The punishment of death shall

be carried out by the administration of a lethal quantity of a drug or drugs until death is

pronounced by a licensed physician according to accepted standards of medical practice."

Okla. Stat. Ann. § 1014.  Additionally, ***Glossip*** was not dispositive regarding midazolam; the

district court found that the plaintiffs were not entitled to a preliminary injunction because

their claims did not have a substantial likelihood of success; the Supreme Court affirmed this

decision, but did not rule that the plaintiffs also should lose the substantive case.  ***Glossip***,

135 S. Ct. at 2736, 2746.  And, importantly, the Supreme Court was reviewing a more

developed record including testimony and documents, not simply affidavits.[3]  ***Id.*** at 2735. It

did not itself weight the expert opinions, as the majority inappropriately does; rather, it found

that the trial court was not clearly erroneous in its conclusion regarding midazolam after the

trial court held a three-day evidentiary hearing.  ***Id.*** at 2739.  Thus, ***Glossip*** is not dispositive

---

[3]"[A]fter discovery, the District Court held a 3-day evidentiary hearing on the preliminary injunction motion.  The District Court heard testimony from 17 witnesses and reviewed numerous exhibits."  ***Id.*** at 2735.

regarding whether an evidentiary hearing is warranted on a state-law claim. Indeed, a thorough evidentiary hearing did occur in *Glossip*, providing the Supreme Court with an adequate record and allowing the district court to decide evidentiary matters and matters of credibility. The majority even goes so far as to chastise Dr. Stevens for failing to cite "probative support" for his conclusion that he was unable to determine the ceiling effect for midazolam. Maj. Op. ¶¶ 20-21. However, the majority denies Jordan the very evidentiary hearing in which he would have the opportunity to present "probative support." Moreover, in *Glossip*, the Supreme Court specifically held that the lack of research on non-therapeutic doses of midazolam applies equally to both parties' cases, noting that "because a 500-milligram dose is never administered for a therapeutic purpose, extrapolation was reasonable." *Glossip*, 135 S. Ct. at 2741.

¶30. Jordan provides a Montana case which addresses a similar deviation-from-state-law challenge, and distinguishes such a claim from a constitutional challenge. *Smith v. Montana*, No. BDV-2008-303 (Oct. 6, 2015). There, the petitioners challenged whether pentobarbital—the drug selected by the Montana Department of Corrections to perform lethal injections—meets the legislative directive that the drug be an "ultra-fast acting barbiturate." *Id.* at *2; *see also* Mont. Code Ann. § 46-19-103(3). The Montana court went to great lengths to distinguish this state-law challenge from an Eighth Amendment claim:

> [I]t is important to clarify the nature of this case. This Court has not been asked and will not make a determination as to whether lethal injection of the Plaintiffs constitutes cruel and unusual punishment. This case is not about the constitutionality or appropriateness of the death penalty in Montana. This case is not about whether the use of pentobarbital in a lethal injection setting is cruel and unusual or if pentobarbital in the doses contemplated by the State of

14

> Montana would produce a painless death. . . . This case is only about whether the drug selected by the Department of Corrections to effectuate the Plaintiffs' lethal injections, pentobarbitol, meets the legislatively required classification of being an "ultra-fast acting barbiturate."

*Id.* at **1-2. After a hearing, the court found that pentobarbital did not meet Montana's statutory requirements and enjoined the state from using the drug in its lethal injection protocol. *Id.* at *11.

¶31. Taking Jordan's claim as a state-law challenge—that is, whether midazolam conforms with Section 99-19-51's requirement that the State use "an appropriate anesthetic or sedative" which "is likely to render the [Jordan] unconscious, so that the execution process should not entail a substantial risk of severe pain"—he has presented sufficient support to warrant an evidentiary hearing. Jordan and the State have produced competing affidavits on a material issue. And, although the State presents a *Daubert*-style defense[4] to Dr. Stevens's affidavit, his affidavit is not a "sham." *Wright*, 577 So. 2d at 390 ("[W]here an affidavit is overwhelmingly belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary to the extent that the court can conclude that the affidavit is a sham no hearing is required.").

¶32. At this point, the relevant inquiry before the Court is whether Jordan is entitled to a hearing. *Cf. Thorson v. State*, 76 So. 3d 667, 676 n.14 (Miss. 2011) ("the evidence sufficient to warrant the granting of an evidentiary hearing . . . in no way permeates the trial judge's

---

[4]In fact, in *Glossip*, the petitioners challenged the state's expert, who was a doctor of pharmacy, claiming that inconsistencies in his testimony existed. *Glossip*, 135 S. Ct. at 2743-45 The district court denied the *Daubert* challenge, and the Supreme Court upheld that decision. *Id.*

testing and weighing of the evidence"); *see also* **Rowland v. Britt**, 867 So. 2d 260, 262 (Miss. Ct. App. 2003) ("The purpose of an evidentiary hearing is for the court to receive evidence in order to make findings of fact.").

¶33. Jordan, through Dr. Stevens's affidavits, has established a *prima facie* claim. The affidavits are not a "sham," nor does the majority find them to be a sham. As such, an evidentiary hearing is warranted, especially when considering the heightened standard of review we apply to death penalty cases.[5] *See* **Harveston v. State**, 597 So. 2d 641, 643 (Miss. 1992) (petition meeting basic pleading requirements is sufficient to mandate an evidentiary hearing unless it appears beyond doubt that petitioner can prove no set of facts which would entitle him to relief). I would therefore grant Jordan's petition and remand the case to the trial court for an evidentiary hearing.

**KITCHENS, P.J., JOINS THIS OPINION.**

---

[5]Because execution is final, it "weighs in favor of hearing plaintiffs' claims." **McGehee v. Hutchinson**, No. 4:17-cv-00179 KGB, 2017 WL 1381663, at \*1 (E.D. Ark. April 15, 2017). A review of the caselaw indicates that courts generally hold evidentiary hearings regarding midazolam claims.